F. #2003R02374
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 18 ★
TIME A.M. ____ P.M. ____

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

DANIEL RUBIN, et al.,

         Defendants.

- - - - - - - - - - - - - - - - -X

DECLARATION IN SUPPORT OF
OF *EX PARTE* APPLICATION
FOR POST-INDICTMENT
RESTRAINING ORDER

No. 04-CR-232 (DGT)

      KURT DENGLER, pursuant to 28 U.S.C. § 1746, declares as follows:

      1.   I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and I have served in that capacity for approximately five years. The information contained herein is based on my experience as a Special Agent, my personal knowledge from conducting this criminal investigation and my review of documents obtained from third-parties.

      2.   I respectfully submit this declaration in support of the Government's *ex parte* application for a post-indictment restraining order. As explained more fully below, Your Honor previously granted the government's application for a restraining order with respect to a controlling block of shares held by the defendant DANIEL RUBIN in 1-800-Attorney, Inc. ("ATTY"). The government has recently learned information that provides probable cause to believe that RUBIN, in his capacity as chief

2

executive officer, a director and the controlling shareholder of ATTY, may dissipate the company's assets and effectively circumvent the existing restraining order.

The Existing Restraining Order

3. On March 10, 2004, a federal grand jury sitting in this District returned a seven-count indictment against defendant DANIEL RUBIN and three others ("the Indictment"). A copy of the Indictment is attached hereto as Exhibit A. As relevant to this application, the Indictment alleges that RUBIN engaged in a scheme to fraudulently induce ATTY to issue him 3,213,535 shares of its stock based on the false representation that RUBIN would pay approximately $1,200,000 concurrently upon receipt of the stock. Ultimately, 1-800-Attorney did issue RUBIN the shares of stock, but RUBIN failed to pay the promised consideration for the stock. (See Indictment, ¶¶ 8-22.)

4. Based in part on these allegations, the Indictment charges the defendant DANIEL RUBIN in three separate counts for his conduct relating to ATTY: in Count One, for conspiracy to commit securities fraud in connection with, among other stocks, ATTY; in Count Two, for the underlying securities fraud offense under 18 U.S.C. § 1348 with respect to ATTY; and in Count Six, for mail fraud, in violation of 18 U.S.C. § 1341.

5. The Indictment also contains a criminal forfeiture allegation for which the United States seeks, pursuant to 18

3

U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), forfeiture of any property involved in each offense in violation of Title 18, United States Code, Sections 1341, 1348 and 1349, and conspiracy to commit such offense, and all property traceable to such property as a result of the defendant DANIEL RUBIN's conviction of Counts One through Six of this Indictment, including but not limited to:

> 3,213,535 shares or certificates of stock, more or less, of 1-800-ATTORNEY, Inc. currently held by, and in the care, custody and control of the defendant DANIEL RUBIN, on behalf of and for the benefit of the defendant DANIEL RUBIN

6. Based on these allegations, on March 17, 2004, the United States sought, and Your Honor granted, an *ex parte* application for an order restraining certain assets alleged to be directly forfeitable, including, but not limited to 3,213,535 shares of ATTY stock. A copy of the restraining order is attached hereto as Exhibit B.

Recent Developments
And the Threat of Dissipation

7. As explained in the Indictment, in connection with his fraudulent promise to pay money to ATTY, the defendant DANIEL RUBIN became chief executive officer of the company. In addition, RUBIN became a director, as did a second person, a New Jersey businessman who was a business partner of RUBIN.

4

(Indictment ¶ 13). In addition, William Wrigley, who was then the President of ATTY, continued in that role and also acted as a director of the company.

8. The government has interviewed Mr. Wrigley on various occasions. In or around January 2005, Mr. Wrigley explained that, in the months following the indictment of the defendant DANIEL RUBIN, Mr. Wrigley has controlled the day-to-day operations of ATTY. At the time, Mr. Wrigley explained that the revenue of ATTY had declined substantially, that its workforce had been reduced, and that he was in the process of negotiating a sale of a substantial portion of the company's assets. Mr. Wrigley stated that he was personally involved in these negotiations, and agreed to keep the government apprised of any sale of assets of ATTY.

9. Today, however, the government learned that the defendant DANIEL RUBIN recently terminated Mr. Wrigley. Specifically, Mr. Wrigley notified the government in writing that the defendant DANIEL RUBIN terminated Mr. Wrigley's employment with ATTY on March 21, 2005. A copy of an e-mail from RUBIN to Mr. Wrigley confirming the termination is attached as Exhibit C. Following his termination, Mr. Wrigley resigned as a director of the company.

10. In light of the termination of Mr. Wrigley, the defendant DANIEL RUBIN now has unfettered control of the assets

5

of ATTY.  RUBIN, upon information and belief, holds at least 90% of the voting shares of ATTY.  In addition, he is the chief executive officer and one of the two directors of the company.  The only other director, the New Jersey businessman, is a business partner of RUBIN.

11.   In addition, it appears that ATTY has substantial assets.  In the January 2005 interview, Mr. Wrigley informed the government that a third-party had expressed interest in purchasing the company's Internet "domain name" and related assets for approximately $1.2 million.  In addition, according to Mr. Wrigley, and as confirmed by third-party records that the government has obtained, the company has several real estate holdings in Florida, as well as cash, securities and other assets.

12.   It therefore appears that ATTY has valuable assets, and the government has an interest in a substantial portion of those assets.  The approximately 3.2 million shares of ATTY that are restrained under the existing restraining order represent at least 70% of the outstanding shares of the company.  Effectively, the restraint on the shares is meant to protect the government's interest in the portion of the company's assets corresponding to the restrained shares.  To the extent that the defendant DANIEL RUBIN could dissipate ATTY's assets, he could diminish the government's recovery of forfeitable assets.

13. Indeed, the termination of Mr. Wrigley creates an added urgency in light of other recent actions by the defendant DANIEL RUBIN. First, RUBIN has made contradictory representations concerning his financial condition, and appears to have made false representations to this Court. At a December 21, 2004 status conference before Your Honor, at which RUBIN was present, RUBIN's counsel represented to the Court that RUBIN needed additional funds to pay defense costs. Based on these representations, the government did not object to RUBIN's request that $150,000 that he had deposited with the Court to secure his bond be released into escrow to pay for attorney's fees. Your Honor granted RUBIN's application.

14. Since then, however, the defendant DANIEL RUBIN has made flatly contradictory representations in a proceeding in New York State Supreme Court, in which RUBIN has submitted an offer to purchase for $1.9 million <u>in cash</u> a Manhattan church property that is the subject of a dispute. In an affidavit submitted in that proceeding (a copy of which is attached as Exhibit D), RUBIN states:

> The Court should be advised that I have offered the sum of One Million Nine Hundred Thousand ($1,900,000) Dollars to purchase these premises, such premises to be without a mortgage contingency, that is, on an all cash deal. I am personally financially ready, willing and able to consummate the purchase of these premises forthwith with ample cash reserves to effectuate such purchase. <u>Additionally the corporation [sic] which I am</u>

<u>a controlling officer of are also financially
ready, willing and able to consummate the
purchase of these premises forthwith with
ample cash reserves to effectuate such
purchase</u>.

Exhibit D at ¶ 3(emphasis supplied).

15. The defendant DANIEL RUBIN's representations that he is able to purchase a property for $1.9 million in cash contradict his claims of financial difficulties that induced the government to consent to, and Your Honor to approve, the release of cash deposited with the Court. In addition, the representations reflect an admission by RUBIN of his control over ATTY and its assets. Finally, and most relevant to this application, RUBIN's affidavit underscores the blurred line between RUBIN's personal and corporate assets, with RUBIN personally offering to purchase the property, but suggesting that corporate funds could be used to effectuate the purchase.

16. In light of RUBIN's now-unfettered control of the assets of ATTY, his misrepresentations to this Court concerning his personal assets, and his representations in the state court proceeding confirming his willingness to utilize corporate assets for personal ventures, there is a serious risk that the defendant DANIEL RUBIN could dissipate the assets of ATTY - including assets that are subject to forfeiture. RUBIN could, for example, use corporate funds to pay for his own attorney's fees, for

8

personal investment ventures such as the one discussed above, or for other uses.

17. To prevent the defendant DANIEL RUBIN from dissipating the assets of ATTY, the government respectfully requests that Your Honor endorse the proposed restraining order (the "Order"). The Order would prohibit DANIEL RUBIN from selling or otherwise disposing of ATTY assets unless the transaction is under $5,000 and is either required to preserve the value of the restrained ATTY stock or is part of the ordinary course of business at ATTY. The Order also requires that any proposed transaction in excess of $5,000 be presented to the United States Attorney's Office and would be permitted if the parties agreed that the proposed transaction is in the ordinary course of business or is otherwise required to preserve the value of the ATTY stock.

Dated:    Brooklyn, New York
          April 1, 2005

*[signature]*
KURT DENGLER
Special Agent
Federal Bureau of Investigation